

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-25-2005

# In Re: Diet Drugs

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3591

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re: Diet Drugs " (2005). *2005 Decisions.* Paper 1552.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1552

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 04-3591, 04-3643 and 04-4096

IN RE: DIET DRUGS
(PHENTERMINE/FENFLURAMINE/DEXFENFLURAMINE)
PRODUCTS LIABILITY LITIGATION

Clara Clark and her agents, attorneys and derivative claimants;
Linda Smart and her agents, attorneys and derivative claimants;
Linda Eichmiller and her agents, attorneys and derivative claimants;
Crystall Gatlin and her agents, attorneys and derivative claimants;
Lonelle James and her agents, attorneys and derivative claimants;
Doris Caldwell and her agents, attorneys and derivative claimants;
Mitzi Wilson and her agents, attorneys and derivative claimants;
Brenda Cook and Richard Cook and their agents, attorneys and
derivative claimants,

Appellants at No. 04-3591

IN RE: CLARA CLARK, and her agents, attorneys and derivative claimants;
LINDA SMART, and her agents, attorneys and derivative claimants;
LINDA EICHMILLER, and her agents, attorneys and derivative claimants;
CRYSTALL GATLIN, and her agents, attorneys and derivative claimants;
LONELLE JAMES, and her agents, attorneys and derivative claimants;
DORIS CALDWELL, and her agents, attorneys and derivative claimants;
MITZI WILSON, and her agents, attorneys and derivative claimants;
BRENDA COOK and RICHARD COOK,
and their agents, attorneys and derivative claimants,

Petitioners at No. 04-3643

1

IN RE: DIET DRUGS (PHENTERMINE/
FENFLURAMINE/DEXFENFLURAMINE)
PRODUCTS LIABILITY LITIGATION


Clara Clark and her agents, attorneys and derivative claimants;
Linda Smart and her agents, attorneys and derivative claimants;
Linda Eichmiller and her agents, attorneys and derivative claimants;
Crystall Gatlin and her agents, attorneys and derivative claimants;
Lonelle James and her agents, attorneys and derivative claimants;
Doris Caldwell and her agents, attorneys and derivative claimants;
Mitzi Wilson and her agents, attorneys and derivative claimants;
Brenda Cook and Richard Cook and their agents,
attorneys and derivative claimants,

Appellants at No. 04-4096

————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. MDL 1203)
District Court Judge: Honorable Harvey Bartle, III

————————

Argued November 16, 2004
Before:  ROTH, SMITH and WEIS, Circuit Judges.
(Filed: January 25, 2005)

John G. Harkins, Jr.
Steven A. Reed
Harkins Cunningham
2005 Market Street
2800 One Commerce Square
Philadelphia, PA  19103

George M. Fleming
Sylvia Davidow
Fleming & Associates
1330 Post Oak Boulevard, Suite 3030
Houston, TX  77056
                *Attorneys for Appellants/Petitioners*

Fred S. Longer
Arnold Levin
Michael D. Fishbein
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA  19106
                *Attorneys for Plaintiffs' Management*
                *Committee and Class Counsel*

Robert D. Rosenbaum
M. Sean Laane
Arnold & Porter
555 12th Street, N.W.
Washington, D.C.  20004

Peter L. Zimroth
Arnold & Porter
399 Park Avenue
New York, NY  10022-4690

Paul B. Kerrigan
Reed Smith
1650 Market Street
2500 One Liberty Place
Philadelphia, PA  19103-7301
                *Attorneys for American Home*
                *Products Corporation*

_____

OPINION

_____

WEIS, Circuit Judge.

The underlying issues here involve claims of personal injury caused by the use of two appetite suppressant drugs produced and distributed by Wyeth. We provided a lengthy summary of the facts in our opinions at 369 F.3d 293 (3d Cir. 2004) and 282 F.3d 220 (3d Cir. 2002). Consequently, we will limit our restatement of the background here.

## I.

In the mid-1990s, data surfaced suggesting a link between use of the Wyeth diet drugs and valvular heart disease (VHD) in humans. As a result, thousands of lawsuits were filed against Wyeth in state and federal courts. The Judicial Panel for Multidistrict Litigation transferred all the federal actions to the United States District Court for the Eastern District of Pennsylvania.

In 1999, the parties reached a tentative settlement agreement for a nationwide class. In exchange for Wyeth's payment of $3.75 billion, the agreement provided that settling class members would release Wyeth from all VHD claims. After conducting a fairness hearing, the District Court entered a final order certifying the class and approving the settlement on August 28, 2000. The terms of the settlement agreement and the final order indicated that the District Court shall have continuing jurisdiction to administer, interpret and enforce the settlement agreement.

Class members were entitled to opt out of the settlement agreement initially, at an intermediate stage or at the "back-end." Those who decided to opt-out at the

4

intermediate stage were informed that the scope of their claims would be limited and specifically they were precluded from "seeking" punitive, exemplary, or multiple damages. The settlement agreement reads,

> "[Intermediate opt-outs] may not seek punitive, exemplary, or any multiple damages against [Wyeth];.... [Intermediate opt-outs] may not use any previous verdicts or judgments against [Wyeth], or factual findings necessary to such verdicts or judgments, for purposes of establishing claims or facts in order to obtain a verdict or judgment. . . . Nor may [an intermediate opt-out] ... seek to introduce into evidence against [Wyeth], for any purpose, such a verdict, judgment or factual finding."

In return for these limitations, Wyeth agreed not to assert any statute of limitations, laches, or similar defenses against the intermediate opt-outs.

In state courts, most of the opt-out plaintiffs pleaded their claims in terms that appeared to abide by the prohibition on seeking punitive damages. However, tactics employed during litigation demonstrated that some plaintiffs were attempting to obtain punitive-type damages through such means as inflated mental anguish recovery and by presenting evidence of reprehensible conduct by Wyeth.

## A. Initial Injunctions

In response to the attempted circumvention of the punitive damages bar, the District Court issued PTO 2625 in plaintiff Clara Clark's case as well as a similar pretrial order, PTO 2828, applicable to other plaintiffs. In addition, the court issued PTO 3088 enjoining plaintiffs from making arguments related to punitive damages and malicious or

5

wanton conduct by Wyeth, as well as prohibiting them from introducing specific categories of evidence and identified exhibits.

## B. Initial Appeal

Plaintiffs appealed, contending that the injunctions did not comply with the settlement agreement or notions of federalism. On May 25, 2004, we vacated PTO 2828 and remanded with instructions to the District Court to modify its pre-trial orders.[1] In re Diet Drugs, 369 F.3d at 317-19. We concluded that the District Court had the power, under the All Writs Act, to effectuate and protect the terms of the settlement through pretrial injunctions affecting state court proceedings. However, we cautioned that opt-outs must be able to fairly litigate the claims preserved under the agreement, and that "intrusion into state court proceedings should be minimized." Id. at 317.

We noted that PTO 2828 was appropriate in so far as it prohibited the parties from:

    (i)    introducing any evidence relevant "exclusively" to punitive damages, specifically evidence of Wyeth's:
        (a)    profits, size or financial condition, and
        (b)    amount or size of sales of diet drugs or other products; and
    (ii)    making "'any statement or argument to the ... jury related directly to evidence relevant only to punitive damages."

---

[1] We addressed our opinion to PTO 2828, directed to Clark; however, we also noted that the District Court would presumably "modify all orders" at issue in the appeal in accordance with the revisions to PTO 2828.

Id.

In addition to specifically approving portions of PTO 2828, we required that

the following provisions be excised:

> (i)     categorical evidentiary restrictions that barred evidence relevant to
>          proving VHD claims;
>
> (ii)    limitations on exhibits and deposition testimony that precluded
>          evidence relevant to VHD claims; and
>
> (iii)   prohibitions on "making any statement or argument to the court" on
>          matters other than those specified.

Id. at 317-18.

Finally, in addition to the required revisions and specifically approved

provisions, we suggested that the District Court consider other measures aside from

imposing evidentiary restraints,

> "for example, ordering language to be included in a stipulation
> or proposed jury instruction that would make it clear to the jury
> that exemplary damages may not be awarded.  Or ... direct[ing]
> the parties to agree to a bifurcated trial-where damages are
> determined apart from liability-in the event that the state court
> were to deem it advisable."

Id. at 318.

### C.  PTO 3888 and District Court Actions Thereafter

In response to our May 2004 opinion and after hearing argument from the

parties, the District Court issued PTO 3888[2] which reads as follows:

---

[2]  This appeal was filed by the plaintiffs in seven state cases.  They
collectively appealed from Pretrial Order No. 3888 entered on August 30, 2004.

"AND NOW, on this 30th day of August, 2004, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) Pretrial Orders ("PTO") Nos. 2680, 2828, 2883, 3088, and 3123 are VACATED;

(2) plaintiffs, their agents, attorneys, and derivative claimants are ENJOINED from introducing any evidence, or making any statements before or argument to [the] jury related to:

(a) punitive, exemplary, or multiple damages;

(b) Wyeth's profits, size, or financial condition; or

(c) the amount or size of Wyeth's sales of diet drugs or other products;

in the following cases: Smart v. American Home Prods., Inc., No. 02-04-40259-CV (Jim Wells County, Tex.) (PTO No. 2680); Clark v. Wyeth, et al., No. B020282-C (Orange County, Tex.) (PTO No. 2828); Wilson, et al. v. Wyeth, et al., No. 03cv305BN (S.D. Miss.), and James, et al. v. Wyeth, et al., No. 2002-95 (Smith County, Miss.) (PTO No. 2883); Eichmiller v. American Home Products Corp., Civil Action No. 2002CV52077 (Fulton County, Georgia), Cook, et al. v. Wyeth, Cause No. 2002-21 (Hinds County, Miss.), and Caldwell v. American Home Products Corp., No. 2002-113-CV3 (Jones County, Miss.) (PTO No. 3088); Gatlin v. American Home Products Corp., et al., No. 2003-4007 (Orleans Parish, La.) (PTO No. 3123);

(3) the parties in the above actions are ordered promptly to agree and stipulate to a reverse-bifurcated trial, that is a trial in which the issues of causation, injury and compensatory damages only are tried first and apart from liability and to agree and stipulate to a jury instruction that punitive, multiple or exemplary damages may not be awarded;

Following the issuance of PTO 3888, the District Court filed Pretrial Order No. 3962 which addressed the plaintiffs' emergency motion to stay PTO 3888's injunction pending appeal. Agreeing to adopt the brief filed in the PTO 3888 appeal, plaintiffs appealed PTO 3962 on October 26, 2004.

(4) plaintiffs, their agents, attorneys, and derivative claimants in the above actions are ENJOINED from trying their actions unless and until the said written Stipulations are filed with the state trial court; and

(5) plaintiffs, their agents, attorneys, and derivative claimants in the above actions are ENJOINED from arguing to the state trial court that the reverse-bifurcation procedure or jury instructions set forth in the aforesaid Stipulations should not be used."

The District Court elaborated on and clarified certain provisions in PTO 3888 during a hearing on September 20, 2004 and incorporated its comments into the Memorandum accompanying PTO 3962. The Court noted that the mandatory stipulation for reverse bifurcation should not be effective "unless and until the state court judge rules that reverse bifurcation is advisable." The District Court also noted that it had inadvertently neglected to use the term "exclusively" in referring to the introduction of evidence or advancing arguments about punitive damages.

## II.

Petitioners filed appeals with this Court as to PTO 3888 and PTO 3962, as well as an emergency petition for writ of mandamus. Because we have jurisdiction over the appeals under 28 U.S.C. § 1292(a)(1), we need not address mandamus. See In re Chambers Development Co., Inc., 148 F.3d 214, 226 (3d Cir. 1998).

The terms of an injunction are reviewed for an abuse of discretion. In re Diet Drugs, 369 F.3d at 304-05; In re Prudential Ins. Co. of Am. Sales Practices Litig., 261 F.3d 355, 363 (3d Cir. 2001). We apply plenary review to a district court's

9

construction of a settlement agreement; review of the factual elements is pursuant to the clear error standard. <u>Coltec Indus., Inc. v. Hobgood</u>, 280 F.3d 262, 269 (3d Cir. 2002).

**III.**

Plaintiffs argue that the three major provisions in PTO 3888, that is, the evidentiary restrictions, the mandatory stipulation provision and the prohibition of argument against use of reverse bifurcation or the jury instruction, should be vacated. Plaintiffs contend that the stipulation for reverse bifurcation is not necessary, is a violation of the Anti-Injunction Act and is inappropriate because the procedure is not permitted, or is disfavored, in some jurisdictions.

Moreover, plaintiffs contend that banning argument against use of reverse bifurcation or the jury instruction unfairly limits counsel's representation in the state court and presents an ethical dilemma by binding counsel to a position their clients do not support. Finally, plaintiffs assert that due process prohibits subjecting class members to understandings that were not expressed or made sufficiently specific in the class notice or settlement agreement.

After carefully considering the plaintiffs' arguments, we agree with the District Court that the state court actions must be tried in accordance with the settlement agreement, particularly the damage limitations. These plaintiffs do not have unfettered causes of action in state courts and conduct that attempts to evade the settlement cannot

10

be permitted. Allowing plaintiffs to defy the punitive damages bar would make a mockery of the agreement and the District Court's jurisdiction.

For the most part, the terms of PTO 3888 are appropriate. They do not enmesh the District Court in extensive micro-management of the state court litigation. As we pointed out in our May 2004 opinion, in some instances the injunctions that predated PTO 3888 resulted in the district judge "effectively adopt[ing] the role of a trial judge in balancing the probative value of evidence against unfair prejudice" to Wyeth. That approach would have resulted in the District Court conducting a "nuanced" and "contextual" evidentiary balancing that should be employed at the pretrial stage "only as an extreme measure." In re Diet Drugs, 369 F.3d at 314.

By avoiding detailed review of evidentiary matters, PTO 3888 strikes an appropriate balance between accomplishing the herculean task of upholding the terms of the settlement while simultaneously respecting the state courts' ability to conduct a trial in accordance with that agreement. As a consequence, PTO 3888 does not transgress the limits of federalism and is in conformance with the settlement agreement.

Given the plaintiffs' concerns about the limitations on arguments in the state courts over reverse bifurcation or the jury instruction, we believe that some clarification is in order. In the Memorandum accompanying PTO 3962, the District Court stated that PTO 3888 was not meant to "prevent the parties from providing any input requested by the [state] judge as to the advisability of reverse-bifurcation" following the

11

submission of the stipulation. Similarly, at the hearing on September 20, 2004, Wyeth's counsel agreed that plaintiffs should be able to respond to whatever concerns the state court might have about how reverse bifurcation or the jury instruction would "work." PTO 3888 would be improved by a brief elaboration.

We suggest that the injunction be amended so that plaintiffs would be free to respond to inquiries from the state court about ancillary issues including, but not limited to, precedent in the jurisdiction applicable to the use of reverse bifurcation particularly in light of mutual consent by the parties; how the issues in a reverse bifurcated trial should be tried and the language to be used in a jury instruction prohibiting a punitive damages award. However, the order should prohibit plaintiffs from stating to the state court that reverse bifurcation or the jury instruction should not be used.

We suggest that the District Court revise three provisions of PTO 3888 that plaintiffs claimed were problematic – the evidentiary restriction, the mandatory stipulation provision and the prohibition of argument against use of reverse bifurcation or the jury instruction. Specifically, a revision of the prohibition of argument against use of reverse bifurcation or the jury instruction could provide counsel with a predetermined method for responding to inquiries from state courts while simultaneously adhering to, and acting in accordance with, the terms of the injunction and the settlement agreement. Such provisions would alleviate counsel's concerns about ethical dilemmas, proper

12

representation of their clients' interests and the possibility of facing contempt proceedings.

The term "exclusively" should be added to the evidentiary restriction provision in accordance with our previous opinion and statements from the District Court.

Finally, we suggest modifying PTO 3888 so that the mandatory stipulation provisions clearly state that the state courts will make the ultimate determination of whether to employ reverse bifurcation or the jury instruction. Similarly, we suggest that the District Court confirm the state courts' authority over the admission of impeachment or rebuttal evidence about topics otherwise encompassed in the evidentiary restriction. Acknowledgment of state court authority over these matters is in keeping with our previous observation that state judges are "capable and willing to enforce the settlement without close and intrusive supervision by the District Court" or excessive "entanglement" in their ability to supervise judicial proceedings in the courtroom. In re Diet Drugs, 369 F.3d at 317.

We believe that our suggestions could be incorporated in PTO 3888 by restating its language with a few modifications so that it would now read:

(1) Pretrial Order Nos. 2680, 2828, 2883, 3088 and 3123 are VACATED;

(2) Plaintiffs, their agents, attorneys, and derivative claimants are ENJOINED from introducing any evidence, or making any statements before or argument

to the jury exclusively related to: (a) punitive, exemplary, or multiple damages; (b) Wyeth's profits, size or financial condition; or (c) the amount or size of Wyeth's sales of diet drugs or other products; in the following cases: <u>Smart v. American Home Prods., Inc.</u>, No. 02-04-40259-CV (Jim Wells County, Tex.) (PTO No. 2680); <u>Clark v. Wyeth, et al.</u>, No. B030282-C (Orange County, Tex.) (PTO No. 2828); <u>Wilson, et al. v. Wyeth, et al.</u>, No. 03cv305BN (S.D. Miss.) and <u>James, et al. v. Wyeth, et al.</u>, No. 2002-95 (Smith County, Miss.) (PTO No. 2883); <u>Eichmiller v. American Home Products Corp.</u>, Civil Action No. 2002CV52077 (Fulton County, Georgia), <u>Cook, et al. v. Wyeth</u>, Cause No. 2002-21 (Hinds County, Miss.), and <u>Caldwell v. American Home Products Corp.</u>, No. 2002-113-CV3 (Jones County, Miss.) (PTO No. 3088); <u>Gatlin v. American Home Products Corp., et al.</u>, No. 2003-4007 (Orleans Parish, La.) (PTO No. 3123);

(3) Admission of any evidence, statements or arguments by plaintiffs, their agents, attorneys, and derivative claimants related to topics (a) - (c) of provision (2) for purposes of impeachment or rebuttal shall be at the state trial court's discretion;

(4) The parties are ordered promptly to agree and stipulate to: (a) a reverse-bifurcated trial in which the issues of causation, injury and compensatory damages are to be tried first and apart from liability; and (b) a jury instruction that punitive, multiple or exemplary damages may not be awarded. However, the state trial court will make the ultimate determination on reverse bifurcation and the jury instruction;

14

(5) Plaintiffs, their agents, attorneys, and derivative claimants in the above actions are ENJOINED from trying their actions unless and until they have filed the two written stipulations described in provision (4) with the state trial court;

(6) Plaintiffs, their agents, attorneys and derivative claimants are ENJOINED from arguing to the state trial court that the reverse bifurcation procedure or jury instruction that they stipulated to pursuant to provision (4) should not be used; however, plaintiffs, their agents, attorneys and derivative claimants may respond to questions or inquiries from the state trial court about matters which may affect the state trial court's decision to reverse bifurcate or to give the jury instruction including, but not limited to, applicable legal precedent about bifurcation, the potential length of the trial, the number of witnesses, and relatedness of evidence to the phases of a reverse bifurcated trial;

(7) If asked by the state trial court whether reverse bifurcation is appropriate, advisable or should otherwise be implemented, plaintiffs, their agents, attorneys and derivative claimants must answer "I am directed by the United States District Court for the Eastern District of Pennsylvania to stipulate to the use of a reverse bifurcated trial and I am not permitted to argue or otherwise make statements against this court's discretionary use of that procedure;" and

(8)     If asked by the state trial court judge whether to utilize, or whether it would be appropriate or advisable to utilize, the jury instruction described in the parties'

15

stipulations, plaintiffs, their agents, attorneys and derivative claimants must answer 'I am directed by the United States District Court for the Eastern District of Pennsylvania to stipulate to a jury instruction that punitive, multiple or exemplary damages may not be awarded and I am not permitted to argue against this court's discretionary use of such an instruction.'

Accordingly, we will remand the case to the District Court for further proceedings consistent with this opinion.

_____