## D.S. v. DePaul Institute

C.P. of Allegheny County, no. GD93-19010.

*Jack L. Bergstein,* for plaintiff A.K.K.
*Helen R. Kotler,* for plaintiffs D.S., C.S., S.S., S.B. and B.W.
*Joni M. Mangino,* for defendants DePaul Institute, Mannion and Sisters of Charity.

*Harry M. Paras,* for defendants G.P., D.P. and G.P. Jr.

WETTICK, *J.,* May 2, 1996—Plaintiff S.S., a minor (date of birth—July 29, 1978), alleges that on numerous occasions she was physically and sexually abused by a male student (G.P. Jr.) while attending DePaul Institute, a private school for hearing-impaired and deaf children. Defendants include DePaul Institute, Sister M. Philomena Mannion, who served as the principal/director of DePaul Institute during the relevant times, and Sisters of Charity, the religious order of Sister M. Philomena Mannion. Through a motion to compel that is the subject of this opinion and order of court, these defendants (referred to as "DePaul Institute") request that I enter a court order compelling S.S. to respond to all questions regarding her sexual activity with persons other than G.P. Jr.[1]

Plaintiffs' complaint alleges that S.S. attended DePaul Institute from 1984 through February 5, 1993. On January 26, 1993, S.S., then age 14, was physically assaulted by G.P. Jr., then age 15. After the incident, S.S. told school officials and her parents that G.P. Jr. had been sexually molesting and physically assaulting her at various sites in the school from 1989 into 1993. The incidents included forcible oral and anal sex. S.S.'s mother complained to DePaul Institute about its failure to provide protection to her daughter and its failure to remove G.P. Jr. from the school.

Plaintiffs allege that Sister M. Philomena Mannion, acting on behalf of DePaul Institute, initially responded by accusing S.S. of consenting to and encouraging this sexual activity. According to plaintiffs, DePaul Institute did not report the incidents to the police; however,

---

1. S.S. has testified as to the incidents involving G.P. Jr.

the parents did so. G.P. Jr. was permitted to remain in the school until the school learned that he had confessed to the police to the crimes of which he was accused. On February 2, 1993, DePaul Institute, acting through Sister M. Philomena Mannion, wrote the names of S.S. and other girls whom G.P. Jr. had sexually molested on a blackboard in a classroom at DePaul Institute. Sister M. Philomena Mannion stated to the members of student council that these girls were being removed from student council because they were "bad girls" and "not trustworthy."

S.S. has raised causes of action in negligence, intentional and negligent infliction of emotional distress, libel, and slander. The injuries for which S.S. seeks recovery include depression, anxiety, and stress for which S.S. has required periodic institutional psychiatric care and ongoing therapy and medication. S.S.'s complaint alleges that as a result of defendants' conduct, S.S. has suffered major depression and post-traumatic stress disorder, including feelings of helplessness, lack of energy, suicidal ideation, depression, nightmares, flashbacks, troubled and confused feelings caused by the responses of significant others, anger toward males, humiliation, shame, and horror. S.S.'s complaint further alleges that she has suffered physical, emotional and financial harm, and that she will continue to need medical and psychiatric treatment and to suffer serious emotional distress. The libel/slander counts include a claim for damages for loss of reputation.

On July 25, 1995, DePaul Institute's counsel deposed S.S. He asked S.S. about her boyfriends. S.S. testified that she began dating Jason (age 16) when she was 15 and that she is still dating him. When DePaul Institute's counsel asked if she had a sexual relationship with Jason, S.S.'s counsel directed S.S. not to answer

the question. Counsel for S.S. stated that she was not going to permit DePaul Institute to inquire about any consensual sexual activity. She said that she would allow her client to be questioned as to any nonconsensual relationships—relationships where S.S. did not agree to things that happened. She stated:

"The distinction that I am drawing is that as to any involuntary sexual activity that occurred to her, you can question her about that. As to any other sexual activity or sexual relationships, I am not going to allow you to do it without a court order." (T. 50.)

DePaul Institute contends that it is entitled to testimony involving any sexual activity, either consensual or coercive, because such sexual activity may have had an impact on S.S.'s psychological and emotional makeup. According to DePaul Institute, it is not possible to determine the extent to which G.P. Jr.'s behavior is responsible for S.S.'s emotional problems without a comprehensive history of S.S.'s sexual activity. DePaul Institute also contends that information concerning S.S.'s sexual activities with other persons is relevant for the libel/slander claims because DePaul Institute will offer testimony that S.S.'s reputation had been harmed prior to disclosure of any of the alleged events which are the subject of this lawsuit. In addition, DePaul Institute contends that information concerning S.S.'s sexual activities with other persons is relevant in assessing the credibility of S.S.'s testimony that her sexual activities with G.P. Jr. were nonconsensual.

S.S.'s counsel contends that requiring S.S. to answer questions about any voluntary sexual activity is beyond what the law requires. Plaintiffs rely on the Rape Shield Law (18 Pa.C.S. §3104) which states that evidence of an alleged victim's past sexual conduct with persons other than the defendant shall not be admissible. Plain-

tiffs contend that this law should be extended to civil proceedings because the legislature would not have intended to give more rights to a defendant in a civil action where incarceration is not at stake.

I have difficulty with plaintiffs' contention that the Rape Shield Law should serve as a basis for denying DePaul Institute's discovery request for several reasons. First, the Act refers only to the inadmissibility of an alleged victim's past sexual conduct in prosecutions under the chapter of the Criminal Code governing sexual offenses. It does not apply to civil proceedings. *In re M.K.,* 431 Pa. Super. 198, 207-208, 636 A.2d 198, 203 (1994). Second, the Rape Shield Law is construed so as to permit the introduction of other sexual conduct when the defendant shows that it has substantial probative value. *Commonwealth v. Sanders,* 420 Pa. Super. 479, 481-82, 617 A.2d 5, 7 (1992). Third, the Rape Shield Law does not create a privilege that bars the discovery of evidence that may be relevant—its purpose is to exclude the admissibility of testimony of prior sexual conduct at trial where the evidentiary value of the testimony is outweighed by its potential for unfair prejudice. Fourth, as I will discuss later, the damage phase of a personal injury action raises issues as to relevancy of the plaintiff's other sexual conduct for purposes of assessing the impact of the incident upon the plaintiff that the legislature would not have considered in enacting the Rape Shield Law. Fifth, in a civil action the plaintiff has control over the litigation; in a criminal proceeding the victim is simply a Commonwealth witness.

Since the Rape Shield Law does not create a privilege, plaintiffs' objections to DePaul Institute's discovery request are governed by Pa.R.C.P. no. 4011(b) which bars discovery which would cause "unreasonable an-

noyance, embarrassment, oppression, burden or expense to the deponent." Almost any discovery request causes some annoyance, embarrassment, oppression, burden or expense to the deponent. Consequently, the issue is whether the discovery request causes *unreasonable* annoyance, embarrassment, oppression, burden or expense. This requires a court to consider both the interests of the party seeking discovery and the burdens that the discovery request imposes on the party opposing discovery.

A deposition at which a deponent would be required to describe his or her consensual sexual activity would be an extremely embarrassing and oppressive experience for most deponents; this is particularly true for an adolescent. See *Commonwealth v. Strube,* 274 Pa. Super. 199, 207-208, 418 A.2d 365, 369 (1979), where the court, in upholding the constitutionality of a portion of the Rape Shield Law, recognized that such an examination has a "highly traumatic and embarrassing effect on the . . . witness" and that courts have a responsibility to protect a witness from such attacks when they are "designed merely to harass or humiliate him." Consequently, I will not permit the discovery which DePaul Institute seeks unless at the very minimum I determine that there is a reasonable likelihood that this information may have a substantial bearing on the outcome of any of the issues in the case.

DePaul Institute raises several arguments in support of its contention that information about S.S.'s consensual sexual activity may have a substantial bearing on the outcome of the case. In its brief, DePaul Institute states that one of its defenses will be that the sexual activities described in plaintiffs' complaint were of a consensual nature. Consequently, the evidence which it seeks will be relevant to prove S.S.'s sexual predisposition. How-

ever, evidence concerning a person's relationships with others has virtually no probative value in assessing the credibility of that person's testimony that he or she was the victim of a sexual assault perpetrated by someone else. *Commonwealth v. Sanders, supra* at 481, 617 A.2d at 7.[2]

DePaul Institute also contends that it is entitled to information concerning S.S.'s consensual sexual activity in order to present a defense to her slander/defamation claims; it states that S.S. should not be allowed to bring a complaint which alleges that she is a virtuous person and then deny the school defendants the right to a defense. However, the issue in the defamation/slander claim involves S.S.'s reputation.[3] My ruling that DePaul Institute may not seek information from S.S. concerning her consensual sexual activity does not preclude DePaul Institute from questioning S.S. or any other person about S.S.'s reputation.

DePaul Institute contends that S.S.'s deposition testimony regarding her past sexual conduct is required because it may conflict with other students' recollections of the same events. However, a ruling that bars DePaul Institute from asking S.S. about consensual sexual activity does not prevent DePaul Institute from offering

---

2. In this case, it is not clear that DePaul Institute will even be questioning the validity of S.S.'s accusations against G.P. Jr. In juvenile court proceedings, G.P. Jr. pled guilty to the charge of involuntary deviant sexual intercourse.

3. "While it is permissible to show that one claiming damages for injury to his reputation has a bad reputation, proof of separate acts of bad conduct or guilt of criminal offenses is not admissible on an issue of general reputation, not even to mitigate damages." *Bausewine v. Norristown Herald Inc.,* 351 Pa. 634, 646, 41 A.2d 736, 742 (1945). See also, *Frisk v. News Co.,* 361 Pa. Super. 536, 546, 523 A.2d 347, 351-52 (1986).

evidence concerning other students' recollections of any events. Furthermore, if DePaul Institute describes specific testimony that it will offer concerning any such events, it may be entitled to a court order barring S.S. from offering rebuttal testimony unless S.S. agrees to appear for a deposition that would address the matters that are covered in the testimony of these witnesses.

While evidence that a person has engaged in sexual activities with persons other than the defendant normally has almost no relevance to the credibility of that person's testimony that he or she was the victim of a sexual assault, in a damage action—unlike a criminal proceeding—other issues are involved for which such evidence may be relevant. DePaul Institute states that even assuming that S.S. was sexually assaulted, DePaul Institute will be challenging S.S.'s assertions that this sexual activity was the sole or primary cause of her psychiatric and emotional problems.[4] DePaul Institute is correct that other traumatic experiences in S.S.'s life may have caused or contributed to her injuries. At trial, DePaul Institute is entitled to present evidence of any other traumatic experiences that contributed to S.S.'s psychiatric and emotional problems. By allowing DePaul Institute to question her client about any nonconsensual sexual experiences, plaintiffs' counsel has apparently conceded that other nonconsensual experiences are relevant to the issue of the extent to which the sexual assaults at DePaul Institute contributed to S.S.'s psychiatric and emotional problems. (She may have made this concession because she believes that

---

4. Plaintiffs must establish that DePaul Institute's negligent conduct was a substantial factor in bringing about the harm to plaintiffs (Restatement (Second) of Torts §431) and/or that the alleged defamation was a substantial factor in bringing about the harm to plaintiffs. (Restatement (Second) of Torts §622A.)

her client will testify that she has not been the victim of other sexual assaults.) The remaining issue is whether any consensual sexual activity, including consensual sexual activity after S.S. left DePaul Institute, is discoverable.

While a consensual sexual relationship can have an impact on a person's emotional well-being, the law does not allow discovery of and testimony regarding a plaintiff's sexual relationships in tort cases arising out of a traumatic experience simply because the plaintiff claims that he or she is having severe emotional problems as a result of the traumatic experience that is the subject of the tort action. Consider, for example, a lawsuit in which a former employee seeks damages for psychiatric treatment as a result of sexual harassment in the workplace; a lawsuit in which a passenger seeks damages for psychiatric treatment as a result of severe facial scarring sustained in an automobile accident; or a lawsuit in which a schoolteacher seeks damages for psychiatric treatment as a result of numerous newspaper articles that falsely accused him of molesting a ninth grade student. In each of these instances, the defendant may raise the same argument that DePaul Institute is raising—the plaintiff should be compelled to provide a complete history of his or her sexual experiences because these experiences may explain some or all of the plaintiff's emotional makeup and psychiatric problems. (A variation on this theme is a defendant's request to compel a female plaintiff to testify about any abortions because possibly it is an abortion—rather than the events that are the subject of the lawsuit—that is the primary explanation for the psychiatric problems.)[5]

---

5. See *e.g., Mendez v. Superior Court (Peery)*, 253 Cal.Rep. 731, 739 (Cal.App. 5 Dist. 1988). ("We address here emotional distress

In each of these instances, I do not allow this discovery because this open-ended search for other traumatic events in a plaintiff's life is not likely to produce significant evidence that would not otherwise be obtained. The law should not force plaintiffs—particularly women who will be the primary targets of such discovery—to disclose their entire sexual and reproductive histories whenever they claim that they have sustained psychiatric problems from a traumatic event that is the subject matter of the lawsuit.

A ruling that bars the defendant from obtaining the plaintiff's entire sexual and reproductive history in every case involving claims for psychiatric problems does not unreasonably interfere with the defendant's ability to challenge the plaintiff's claim that the tortious conduct that is the subject of the lawsuit caused or substantially contributed to the plaintiff's psychiatric problems. The plaintiff has the burden of proof; the defendant will have the opportunity to review relevant psychiatric records and to question mental health providers who have treated the plaintiff for the psychiatric problems al-

---

distinctly related to particular conduct separate and apart from the turmoil created by life in general. Were we to accept defendants' proposition, arguably a defendant might pry not only into the sexual affairs of the plaintiff and her spouse, but into her financial affairs, her health (medical records) and the health of her spouse, children, parents, and siblings. Problems in any of these areas *might* have caused pre-existing emotional upset."); *Boler v. Solano County Superior Court (Everett)*, 247 Cal.Rep. 185, 189 (Cal.App. 1 Dist. 1987), and cases cited (overly broad discovery order is impermissible intrusion into sexual privacy of defendant and unknown third parties); *Greene v. Aberle*, 568 N.Y.S.2d 300 (Supp. 1991) (information regarding defendant's virginity, medical treatment, sexual history, and possible spontaneous or clinical abortions were not material or necessary to the plaintiff's claims that defendant falsely accused the plaintiff of rape).

legedly caused by the events that are the subject of the lawsuit. These mental health providers will have obtained a history of events that may have impacted on the plaintiff's current emotional problems that would be a part of the information that the defendant's expert may obtain. Furthermore, a ruling in this case that De-Paul Institute cannot seek information from S.S. regarding consensual sexual activity where no foundation has been laid for this discovery, does not necessarily mean that S.S. cannot be questioned regarding information concerning any relationships with other persons that are referred to in psychiatric reports, reports and records of treating physicians, and expert reports.

Since S.S.'s counsel has elected to object to questions regarding her client's consensual sexual activity, the testimony that S.S. offers at trial cannot include matters that might have been covered at her deposition if she had provided the information which DePaul Institute seeks. This means, for example, that S.S. is barred from giving testimony as to whether or not she has engaged in consensual sexual activities or testimony that the assaultive behavior that is the subject of this lawsuit has interfered with her ability to have normal sexual relationships with men.[6]

While the discovery issues in this case are not governed by the Rape Shield Law, various issues raised in this opinion overlap with the issues decided by the Pennsylvania appellate courts in the case law governing the Rape Shield Law. In these instances, the rulings

6. In *Stenger v. Lehigh Valley Hospital Center,* 530 Pa. 426, 439, 609 A.2d 796, 803 (1992), the Pennsylvania Supreme Court stated that Pa.R.C.P. no. 4011(b) "is merely a codification of this court's analysis of the constitutional right to privacy . . . . " Certain testimony or assertions may give rise to a waiver of this constitutional right.

and analysis of this opinion are consistent with this appellate court case law.

In the case of *In re M.K., supra*—a dependency case in which a paramour of the child's mother was found to have sexually abused the child and was ordered to have no contact with the mother or her minor children until he underwent rehabilitation—the paramour objected to a decision of the trial court not to allow him to question the child (13 at the time she testified) about her past sexual experiences. The Superior Court ruled that the trial court erred in applying the Rape Shield Law because its scope "is limited to criminal prosecutions relating to sexual offenses." *In re M.K., supra* at 208, 636 A.2d at 203. At the same time, however, the Superior Court upheld the decision to exclude the testimony on the ground that the victim's relationship with a third party "simply does not tend to prove or disprove the allegation that she was sexually abused by appellant."

Our appellate courts hold that the provisions of the Rape Shield Law which bar a criminal defendant from being entitled as a matter of right in every case to question the alleged victim regarding her prior sexual activity do not violate the defendant's due process rights because there is no logical correlation between a victim's willingness to have engaged in sexual activities with others and a victim's claim that he or she did not consent to the sexual activity that is the subject of the current legal proceedings. See *Commonwealth v. Wall*, 413 Pa. Super. 599, 609-616, 606 A.2d 449, 455-58 (1992). The purpose of the Rape Shield Law is to bar harassing and embarrassing inquiries into irrelevant prior sexual conduct of sexual assault complainants. *Commonwealth v. Sanders, supra* at 481, 617 A.2d at 7; *Commonwealth*

*v. Nieves,* 399 Pa. Super. 277, 286-93, 582 A.2d 341, 346-49 (1990).

The Rape Shield Law has not been construed to prohibit absolutely, evidence of prior sexual activity of the complainant.

Instead, it has been construed to place the burden on the defendant to describe the evidence he or she seeks to admit and to explain why it is relevant to the defense. When a court determines that the evidence is relevant, that it is not cumulative of evidence otherwise admissible at trial, and that it is more probative than prejudicial, the evidence may be introduced. *Commonwealth v. Sanders, supra; Commonwealth v. Wall, supra* at 615, 606 A.2d at 457. What is barred is a fishing expedition where there is no reasonable likelihood that evidence which is more probative than prejudicial will be found. *Commonwealth v. Sanders, supra; Commonwealth v. Wall, supra; Commonwealth v. Troy,* 381 Pa. Super. 327, 333-36, 553 A.2d 992, 996-97 (1989). This process forces the defendant to frame the precise issues and interests involved and prevents the defendant from embarking on a fishing expedition. *Commonwealth v. Wall, supra.*

Also see Federal Rule of Evidence 412(b)(2) which sets forth the following exception to the general rule that evidence offered in a civil case to prove the alleged victim of sexual misconduct engaged in other sexual behavior is inadmissible.

"In a civil case, evidence offered to prove the sexual behavior or sexual predisposition of any alleged victim is admissible if it is otherwise admissible under these rules and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party. Evidence of an alleged victim's reputation is admissible only if it has been placed in controversy

by the alleged victim." 28 U.S.C. Appx. Rule 412(b)(2).

The notes of advisory committee on proposed 1994 amendment to Federal Rule of Evidence 412 further states:

"The reason for extending Rule 412 to civil cases is . . . obvious. The need to protect alleged victims against invasions of privacy, potential embarrassment, and unwarranted sexual stereotyping, and the wish to encourage victims to come forward when they have been sexually molested do not disappear because the context has shifted from a criminal prosecution to a claim for damages or injunctive relief. There is a strong social policy in not only punishing those who engage in sexual misconduct, but in also providing relief to the victim. . . . *The procedures set forth in subdivision (c) do not apply to discovery of a victim's past sexual conduct or predisposition in civil cases, which will be continued to be governed by Fed.R.C.P. 26. In order not to undermine the rationale of Rule 412, however, courts should enter appropriate orders pursuant to Fed.R.C.P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality.* Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery." (emphasis added)

For these reasons, I enter the following order of court:

## ORDER

On May 2, 1996, it is hereby ordered that defendants' motion to compel is denied.