COMMONWEALTH of Pennsylvania by Gerald J. PAPPERT, in his capacity as Attorney General of the Commonwealth of Pennsylvania, Plaintiff

v.

TAP PHARMACEUTICAL PRODUCTS, INC.; Abbott Laboratories; Takeda Chemical Industries, Ltd.; AstraZeneca PLC; Zeneca, Inc.; AstraZeneca Pharmaceuticals LP; AstraZeneca LP; Bayer AG; Bayer Corporation; GlaxoSmithKline, P.L.C.; SmithKline Beecham Corporation; Glaxo Wellcome, Inc.; Pfizer, Inc.; Pharmacia Corporation; Johnson & Johnson; Amgen, Inc.; Bristol–Myers Squibb Company; Baxter International Inc.; Aventis Pharmaceuticals, Inc.; Boehringer Ingelheim Corporation; Schering–Plough Corporation; Dey, Inc., Defendants.

Commonwealth Court of Pennsylvania.

June 21, 2006.
Publication Ordered Aug. 21, 2006.

COLINS, President Judge.

## *OPINION AND ORDER*

Two pending matters, involving similar issues, await this Court's resolution: (1) the Commonwealth's Emergency Motion to Compel Production of Documents (hereafter called Motion to Compel), and (2) the Objections of Defendants' TAP Pharmaceutical Products and Abbott Laboratories to the Commonwealth's proposed use of approximately fifty documents in its intended responses to Motions for Protective Orders filed by Defendants AstraZeneca, GlaxoSmithKline, and Intervenors Boswell, Vickery and Young. The Commonwealth originally served a discovery request (Re-

quest No. 3) upon the Defendants in June 2004 after it filed its original complaint in this matter. The Defendants filed objections to Request No. 3, but the Commonwealth did not seek to compel compliance with the request until after this Court had overruled preliminary objections to the Corrected Amended Complaint that is still pending. After the Defendants filed answers and new matter[1] and the Commonwealth filed responses to the Defendants' new matter, the Commonwealth apparently resumed its pursuit of discovery, serving subpoenas duces tecum on numerous in-house and outside counsel who had worked with or for some of the Defendants. These subpoenas prompted the Defendants to file the Motions for Protective Orders. The Commonwealth then filed its Motion to Compel compliance with its Request No. 3 as a means of obtaining documents it deemed helpful in responding to the Motions for Protective Orders.

Following a conference this Court conducted on April 26, 2006, the parties submitted a stipulation that addressed the Commonwealth's interest in submitting certain documents in its answers to the Motions for Protective Orders. The stipulation provided in pertinent part that the Commonwealth would submit to the Defendants a list of documents that it wants to include in its oppositional response to the Motions for Protective Orders and in support of its attorney-subpoenas. TAP and Abbott filed a joint objection to fifty documents the Commonwealth would like to submit with its response.

The Motion to Compel and the Objections to the Commonwealth's proposed use of the fifty documents are related in that the documents sought in both were the subject of discovery in litigation in other jurisdictions. Request No. 3 sought "all discovery produced in any AWP [Average Wholesale Price] litigation." That broad request encompassed litigation involving TAP and Abbott and the drug Lupron. Of significance to this case is the fact that the Commonwealth and TAP settled the Commonwealth's claims against TAP in the Corrected Amended Complaint involving TAP's drug Lupron. The Commonwealth and TAP submitted a Joint Stipulation to this Court on December 1, 2005 seeking dismissal with prejudice of the Commonwealth's Lupron-related claims. This Court entered an order on December 13, 2005 granting these parties' Motion to Dismiss with prejudice the Commonwealth's Lupron-related claims. The Joint Stipulation noted that the Commonwealth initially had sought to opt-out of a national class action and settlement of Lupron claims (*In re Lupron Marketing and Sales Practices Litigation*, C.A. No. 01–CV–10861, MDL 1430, hereafter referred to as MDL 1430), but that the Commonwealth eventually reached an agreement with TAP and Abbott

> whereby the Commonwealth agreed to opt back into the MDL Settlement and completely release all of its claims relating to the marketing, pricing, cost, purchase or sale of Lupron, in exchange for a payment from the net consumer settlement pool. Consistent with the release provided by the Commonwealth, the parties to this Joint Stipulation seek to dismiss all Lupron-related claims.

Joint Stipulation, Paragraph 3.

In resolving its MDL 1430 claims, the Commonwealth entered an agreement captioned "Agreement Between and Among MDL Class Plaintiffs, Defendants, Minne-

---

1. With the exception of two defendant groups whose preliminary objections challenging this Court's jurisdiction are still pending.

sota, and Pennsylvania" (MDL Agreement). Pursuant to Paragraph 5 of the MDL Agreement, the Commonwealth was required to withdraw its Notice of Exclusion, the means by which it had sought to opt-out of the MDL 1430 class litigation. Paragraph 6 of the MDL Agreement pertains to the release of state claims and provides "If this States Agreement becomes effective pursuant to Paragraph 1 above, the States will be participating in the Class Settlement as members of the Lupron Purchaser Class and will be deemed Releasors under the terms of the Class Agreement and will release their claims as provided in the Class Agreement. . . ." Of final importance is paragraph 7, which required the Commonwealth to seek dismissal of the claims it raised in the Corrected Amended Complaint, and which prompted the above-noted Joint Stipulation and ultimate dismissal with prejudice of the Commonwealth's Lupron-related claims in this case.

The MDL 1430 Settlement Agreement and Release has particular relevance to this Court's evaluation of the Motion and Objections. As noted in the paragraph above, the Commonwealth's MDL Agreement imposed upon the Commonwealth the terms of the Release in the Class Agreement. As part of that settlement, the Commonwealth signed a release which provides in pertinent part as follows:

> (y) "Released Claims" means any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Releasor who has not timely excluded themselves from the Lupron Purchaser Class, whether or not they object to the settlement and whether or not they make a claim upon or participate in the Class Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions alleged or that could have been alleged in any litigation relating to the marketing, sale, cost, pricing or purchase of Lupron. "Released Claims" specifically includes, but is not limited to, all claims against any person or entity relating to Lupron transactions where the cost, reimbursement amount or price of the Lupron to the Consumer Class Member, TTP Class Member, SHP Class Member, SHP Member Group, or any doctor, pharmacy or other health care provider, was based in any part on the Average Wholesale Price ("AWP") or any other price of Lupron or any other product as published by Redbook, Medispan, or any similar publication. All Releasors covenant and agree that, after the Effective Date of this Class Agreement, they shall not seek to establish liability based, in whole or in part, on any of the Released Claims. "Released Claims" shall not include claims arising out of this Class Agreement or claims between members of the Lupron Purchaser Class and any of the Releasees concerning product liability or personal physical injury.

> . . .

> 18. *Releases.*

> (a) Upon the Effective Date of this Class Agreement and in accordance with Paragraphs 7 and 8, the Releasees shall be released and forever discharged from any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Releasor who has not timely excluded themselves from the

Lupron Purchaser Class, whether or not they object to the Class Agreement and whether or not they make a claim upon a participate in the Class Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions alleged or that could have been alleged in any Lupron Pricing Litigation. All Releasors covenant and agree that they shall not hereafter seek to establish liability against any Releasee based, in whole or in part, on any of the Released Claims.

. . .

19. *Preservation of Rights.* The parties hereto agree that this Class ·Agreement, whether or not the Effective Date occurs, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, or any liability or wrongdoing by Defendants or of the truth (or by the Plaintiffs of the infirmity) of any of the claims or allegations contained in the various complaints in the Lupron MDL Actions or any other Lupron Pricing Litigation; and evidence thereof shall not be discoverable or used directly or indirectly by the Lupron Purchaser Class or any third party, in any way (except that the provisions of this Class Agreement may be used by the parties to enforce its terms), whether in the Lupron Pricing Litigation or in any other action or proceeding. The parties expressly reserve all their rights and defenses if this Class Agreement does not become final and effective substantially in accordance with the terms of this Class Agreement.

After the District Court Judge in MDL 1430 conducted a fairness hearing regarding the proposed Settlement Agreement, in addition to granting approval to the settlement and its releases, the Judge issued an injunction prohibiting any class member from continuing to prosecute any released claim, which she defined as any claim of any type "arising out of any conduct, events or transactions alleged or that could have been alleged in any litigation relating to the marketing, sale, cost, pricing or purchase of Lupron," under the Settlement Agreement.

With this procedural and historical background in mind we will address the Commonwealth's Motion to Compel and TAP and Abbott's Objections. TAP and Abbott rely in large part upon the terms of the release to support their response to the Commonwealth's Motion to Compel. Accordingly, we will first address the question of whether the MDL Agreement precludes the Commonwealth from seeking to have TAP and Abbott produce discovery from that litigation.

## I. Motion to Compel

TAP and Abbott rely in large part upon the terms of the MDL 1430 Settlement Agreement Release (release) to support their response to the Commonwealth's Motion to Compel. Accordingly, we will first address the question of whether the MDL 1430 Settlement Agreement precludes the Commonwealth from seeking to have TAP and Abbott comply with Request No. 3.

### A. *Lupron Settlement Release and Injunction: Effect on Discovery*

TAP and Abbott, in arguing that the Court should deny the Motion to Compel and sustain the defendants' objections to the Commonwealth's requested use of documents, rely upon a federal court decision,

*In re Prudential Insurance Company of America Sales Practice Litigation,* 261 F.3d 355 (3d Cir.2001), for the proposition that the Commonwealth's release of claims under the terms of its Settlement Agreement and the federal district court's issuance of an injunction in the MDL 1430 case, prohibit the Commonwealth's use of any Lupron-related documents, specifically those the Commonwealth now seeks to use.

In that case, the Court of Appeals affirmed a district court decision enjoining a party from engaging in discovery in a civil action the party had initiated in the state of Florida. Before initiating their action in Florida, the plaintiff parties, the Lowes, had been members of a federal class action lawsuit filed against Prudential Insurance Company. The class action alleged that Prudential agents had engaged in deceptive sales practices, specifically "churning, vanishing premiums, and fraudulent investment plans...." *Id.* at 358.

During the litigation, the class representative reached agreement with Prudential, and the district court concurrently entered an order certifying the class for settlement purposes. The certification order required Prudential to provide class notices that included a provision advising class members of the nature and effect of the class release. That release, which applied to the Lowes, provided that members would agree not to "institute, maintain or assert ... any and all causes of action, claims ... that have been, [or] could have been, asserted by Plaintiffs or any Class Member against [Prudential] in any other court action ... connected with ... The Released Transactions." *Id.* at 360. The term "Released Transactions" included "marketing, solicitation, applica-

tion, underwriting, acceptance, sale, purchase, operation, retention, administration, servicing, or replacement by means of surrender, partial surrender, loans respecting, withdrawal and/or termination of the Policies or any insurance policy or annuity sold in connection with, or relating in any way directly or indirectly to the sale of solicitation of, the Policies." *Id.*

Additionally, the class notice informed members that they could exclude themselves from the class with regard to some, but not all of their policies. Finally, the district court's certification order included an injunction reflecting the concern of the court that it continue to be able properly to oversee the orderly resolution of the nationwide claims. Included within the terms of the injunction, the District Court ordered that all Policyholders were "enjoined from filing, commencing, prosecuting, continuing, litigating, intervening in or participating as class members in any lawsuit in any jurisdiction based on or related to the facts and circumstances underlying the claims and causes of action in this lawsuit, unless and until such Policyholder has timely excluded herself or himself from the Class." *Id.* at 361.

The Lowes were members of the class by virtue of their purchase of four Prudential policies.[2] However, the Lowes had requested that two of the policies be excluded from the class. Ten months after the District Court certified the class and approved the settlement, the Lowes initiated an action in Florida asserting a claim against Prudential in which they alleged that an agent engaged in fraudulent practices in connection with all five of their policies. The Lowes later amended their claim by removing the two class policies

---

**2.** The Lowes had purchased a fifth policy, but that one was not encompassed in the class lawsuit.

that were covered by the class action. The remaining two excluded state claims included charges that Prudential had violated a fiduciary duty, Florida's RICO statute, had committed negligent misrepresentations and engaged in fraudulent inducement, common law fraud, constructive fraud, reckless and wanton supervision, and unjust enrichment. *Id.*

Prudential replied to the amended state complaint by asserting that the Lowes's remaining claims were based upon the circumstances surrounding their purchase of the two class policies. Although the state claims strongly resembled the claims in the class action, the Lowes asserted that they were not seeking to recover on claims relating to the class policies that had been resolved through the class settlement. However, counsel for the Lowes did admit that the facts surrounding those claims, i.e., pattern and practice, were relevant to the claim of the remaining policy claims, and to that end, the Lowes intended to rely upon evidence relating to the class policies. Based upon these admissions, Prudential requested the district court to issue an order holding that the Lowes's pursuit of the excluded Florida claims violated the terms of the class settlement.

During the course of the Florida litigation, the Lowes served discovery on Prudential requesting approximately 85 documents that related to evidence involving the circumstances of the class claims. The district court opined that allowing the Lowes to use evidence of sales and practices that were the subject of the class claims in pursuing their state claims would unacceptably impair the resolution of the settled class claims. The district court's order directed the Lowes (rather than the state court) to refrain from pursuing discovery or engaging in motions practice that was based on or related to facts underlying the released claims. The Lowes

appealed the district court's injunction order, and the Court of Appeals reviewed the decision under the abuse of discretion standard applicable to appeals from injunctive relief set forth in the federal Anti–Injunction Act. 28 U.S.C. § 2283.

The Court of Appeals noted that federal courts have held that "judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim was not presented, and could not have been presented, in the class action itself." *Id.* at 366. The Court summarized the authority supporting this proposition as follows: "[A] federal court may release claims over which it has no subject matter jurisdiction if the state claims arise from the same nucleus of operative facts as the claims properly before it." *Id.*

The Court did not end its inquiry with recognition of this notion. The Court looked specifically to the class notice, which included broad language that did indeed refer to sales practices in general, but also specifically referred not only to the class policies, but also referred to claims regarding "any insurance policy or annuity sold in connection with or relating in any way directly or indirectly to the sale or solicitation of, the Policies."

The district court had looked to the terms of the release that barred class members from pursuing claims against Prudential based on, connected with, arising out of, or related to in whole or part, their class claims. The court recognized that, by participating in the settlement, the settlement resulted in both claim and issue preclusion, and prevented class members from relying upon the "nucleus of operative facts" underlying the settled claims.

The Lowes also argued that, by interpreting the release as it did, the district court essentially rendered nugatory the

language of the same agreement that permitted class members to have certain policy claims excluded from the class. The Court of Appeals responded to this argument by stating that the Lowes were not precluded from asserting their excluded claims, but merely precluded from using evidence common to the purchase and sale of their Class claims and their excluded claims.

■ As is clearly suggested and stated, TAP and Abbott assert that the release the Commonwealth signed encompasses the Commonwealth's Prevacid claims as well as Lupron claims just as the release in *Prudential* encompassed both the class claims and the excluded claims. As quoted above, the Commonwealth agreed to release all claims arising out of "any conduct, events or transactions alleged or that could have been alleged in any litigation relating to the marketing, sale, cost, pricing, or purchase of Lupron." However, in this case, the Commonwealth's claims regarding Prevacid could not necessarily have been brought in the Lupron litigation. That class action was specifically limited to TAP's conduct with relation to Lupron. TAP has not suggested that the Commonwealth could have brought its Prevacid claims within those presented in the class action regarding Lupron. Further the release by its own terms limits the preclusive effect to those matters regarding the sale, marketing, cost, pricing, or purchase of Lupron. On its face the release only limits other Lupron claims.

TAP also relies on the language of the release to the effect that the Commonwealth agreed "not to seek to establish liability based, in whole or in part, on any of the Released Claims." We believe that this language can be reconciled with the Commonwealth's discovery request. The released claims are solely related to Lupron, as noted above. We agree with the Commonwealth that its Prevacid claims are not based on, connected with, arising out of, or related to the marketing, sale, cost, pricing, or purchase of Lupron. While we do not accept that TAP's agreement to cooperate with investigations the Commonwealth is conducting or intending to conduct regarding all AWP practices, as this provision in the criminal plea agreement appears to this Court to require on-going cooperation in criminal investigations, rather than cooperation with any civil lawsuit "investigation," the Court does not conclude that the release limits the Commonwealth's right to discovery to only Prevacid-related information or documents. If a Lupron-related document is general in its focus, or relates to both Lupron and Prevacid, it may lead to relevant information pertaining to the Prevacid claims. This conclusion does not mean that such information or documents would be admissible at trial, but perhaps only for discovery purposes. Accordingly, we conclude that the Settlement Agreement and release in MDL 1430 does not preclude discovery in this case.

### B. Relevancy

In its individual response to the Commonwealth's Motion to Compel, TAP argues that the discovery the Commonwealth seeks in Request No. 3 is irrelevant and beyond the scope of discovery under the Pennsylvania Rules of Civil Procedure. Prevacid is the only subject of the Commonwealth's remaining claims against TAP. By contrast, Request No. 3 requests documents relating to any AWP litigation, which necessarily includes the litigation involving only Lupron. TAP asserts that the Commonwealth has not submitted any theory that supports its broad request for all discovery produced in any AWP litigation.

As TAP notes, the Rules of Civil Procedure allow parties to conduct discovery of matters relevant to pending matters. Pa. R.C.P. No. 4003.1. TAP argues that documents produced in Lupron-related litigation cannot be relevant because they do not relate to the subject matter of the remaining claim involving Prevacid. The discovery produced in Lupron-only cases, TAP argues, relates to a single subject matter—Lupron. The Commonwealth naturally takes a different tack in support of its objective. The Commonwealth asserts essentially that the subject matter of the present case is the sales, pricing, and marketing practices of TAP, and that even though Request No. 3 encompasses Lupron-only-related **litigation,** some of that discovery not only mentions Prevacid, but also relates to general conduct not limited to TAP's practices with regard to Lupron. Further, even if other items of discovery mention only Lupron, it nevertheless could lead to relevant information regarding the more specific aspect of this case, the sales, pricing, and marketing of Prevacid.

Following that reasoning, the Commonwealth argues, in Pennsylvania the Rules of Evidence define "relevant evidence" as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The rules of discovery involve a standard that is necessarily broader than the standard used at trial for the admission of evidence; the purpose of allowing a broader standard is to ensure that a party has in its possession all relevant and admissible evidence before the start of trial. By allowing such broad discovery, the parties may avoid surprise and unfairness at trial. *See American Future Systems, Inc. v. BBB,* 872 A.2d 1202 (Pa.Super.2005). At this juncture we cannot conclude that the Commonwealth is seeking documents that are irrelevant to its Prevacid claims. Even accepting that some of the documents may refer only to Lupron, we cannot here state with authority that they could not be relevant to the Commonwealth's claims concerning Prevacid. It is possible that the documents, while mentioning only Lupron by name, also refer to matters concerning TAP's general practices, without mentioning Prevacid by name. Accordingly, we cannot dismiss the Commonwealth's Motion to Compel documents sought under Request No. 3 on the basis of lack of relevancy.

### C. Harassment

TAP argues that allowing the discovery sought under Request No. 3—the discovery TAP produced in the AWP litigation that occurred in other jurisdictions, which the parties agree amounts to approximately one million pages—would constitute harassment. The Commonwealth replies by noting that no harassment is involved because it is already in possession of the documents by virtue of the discovery in those other cases. Thus, the Commonwealth does not need to impose upon the personnel and resources of defendants that the production would ordinarily involve. We understand TAP's position that, if the attorneys for the Commonwealth had not been involved in those other cases (the Commonwealth having not been a party to them), it would have to proceed in the normal way to obtain the documents. However, TAP has not cited any authority to support this argument as basis to preclude the Commonwealth's use of documents it has in its possession. If relevancy is not an issue, and if TAP has no responsibility to oversee the physical production of the documents, we can see no reason to conclude that the request constitutes harassment. TAP, having once

produced the documents to the Commonwealth's attorneys, albeit while they were representing other clients, knows what documents it produced. Hence, it cannot be surprised or prejudiced by the use of the previously discovered documents. Accordingly, we will not deny the motion on the basis of harassment.

## II. Defendants' Objections to the Commonwealth's Use of Certain Documents for its Response to the Motions for Protective Orders

### A. TAP Criminal Litigation Documents

■ The Commonwealth has requested to use two documents pertinent to a guilty plea arising from the Federal Government's prosecution of TAP for unlawful marketing and sales of Lupron—a sentencing memorandum and a plea agreement. During the course of oral argument on the Motion to Compel and the Objections, counsel for TAP and Abbott argued that these documents have little or no relevance to the Commonwealth's claims regarding Prevacid. With regard to the sentencing memoranda (a government-generated document submitted to the federal criminal court that acts somewhat as a position paper), counsel pointed out that Prevacid is mentioned only twice in the document. In the first instance, the document mentions Prevacid as one of two drugs TAP manufactures. In the second instance, the document states that TAP has entered a plea agreement concerning Lupron and Prevacid. Counsel for TAP does acknowledge that the document references conduct pertaining to defendant AstraZeneca, but argues that, if the Commonwealth's purpose for using the document is to buttress its case against that defendant, the Commonwealth should seek the same information from AstraZeneca.

In asserting its desire to use the documents, the Commonwealth points to the plea agreement because it does indicate that the plea relates to conduct regarding both Lupron and Prevacid. The Court is also mindful that the sentencing memorandum does not appear to the Court to have much evidentiary value, and is likely, as TAP and Abbott assert, inadmissible hearsay and irrelevant. As to the relevancy of the documents, at this early stage of the proceedings the Court believes that it is not yet in a position to judge the ultimate relevancy of the two documents. If, for example, the Court conducts a hearing on the Motions for Protective Orders, it will be in a better position to consider the relevance and admissibility of the documents. The Commonwealth's certain purpose for including the documents is no doubt to convince the Court that it needs to depose the attorneys for whom the Defendants and Intervenors seek the Protective Orders; however, if a hearing is necessary, the Court will be able to evaluate the evidentiary quality of the documents at that time. Because the documents relate to charges involving both Lupron and Prevacid, albeit the settlement of charges regarding Prevacid, we will allow the Commonwealth to use the documents in its response to the motions for protective orders.

### B. MDL 1430 Release and Injunction

Although TAP and Abbott's Objections arise in a context distinct from the Motion to Compel—respectively, a request to use documents in a responsive pleading as compared to simple discovery (which as suggested above, we approve generally under the legal tenet that the discovery could lead to relevant information)—we will nevertheless permit the Commonwealth to use the documents in its response to the Motions for Protective Orders. For the reasons stated above, we do not conclude that the MDL 1430 release and injunction pre-

clude the use of the documents by the Commonwealth in its response to the Motions for Protective Orders. TAP and Abbott point out reasons why the documents are not relevant or admissible. However, for the reasons noted above in our discussions of the relevancy of documents sought under Request No. 3 and in our discussion of the two documents relating to the federal plea, we are not at the point where we have to decide the relevancy of the documents, or whether they are admissible. As noted above, if the Commonwealth includes the documents with the intent of persuading the Court that the attorney depositions are necessary, the Court will evaluate the legal consequence of the documents and determine the evidentiary value, if any, when reviewing the Motions for Protective Orders and the Commonwealth's response. TAP and Abbott can renew their specific objections as to whether the Court should consider the documents in its resolution of the Motions when the Court has the Commonwealth's response before it. The court, accordingly, will provide TAP and the other defendants an opportunity to reply to the Commonwealth's response.

### C. Redaction of Lupron Documents or Limitation to Prevacid–Only Documents

TAP and Abbott suggest with regard to Request No. 3 and the Objections that the Court should limit the production and use to documents that refer only to Prevacid, or in the alternative to require the redaction of references to Lupron. As our discussion above suggests, we conclude that the ultimate relevancy of the documents sought to be obtained by the motion to compel and those to be used by the Com-

monwealth in its response to the motions for protective orders, must await, if necessary, consideration another day. Further, as the parties have submitted an Interim Protective Order, we do not at this time believe redaction is necessary.[3]

Accordingly, we enter the following ORDER:

AND NOW, this 21st day of June, 2006, the Commonwealth's Emergency Motion to Compel Defendants to Produce Documents in discovery Request No. 3 is **granted,** and defendants TAP and Abbott's Objections to the Commonwealth's use of objected-to documents are **denied.** In conducting this discovery and document production, the Plaintiff and Defendants shall comply with the terms of the Interim Protective Order filed June 19, 2006.

---

**3.** If this matter proceeds to trial, the defendants may file a motion in limine requesting the redaction of the word "Lupron." The Court would likely grant such a request and possibly direct that the word be replaced with a phrase such as "non-subject drug."