**Arvonio v. PNC Wealth Management**

C.P. of Lackawanna County, No. 11 CV 478

*George A. Reihner*, for plaintiffs.
*Michael J. Donohue*, for defendant.

NEALON, *J.*, December 20, 2013—Defendant, PNC Wealth Management ("PNC Wealth"), has filed *de novo* appeals from the special discovery master's orders dated September 10, 2013, and September 23, 2013, denying PNC Wealth's motions for protective orders with respect to depositions that plaintiffs, Robert T. Arvonio and Robert Rossi, Individually and t/a Robert Rossi & Co. Realty ("Arvonio and Rossi"), have scheduled of officers and designated witnesses of two non-parties, PNC Bank, National Association ("PNC Bank"), and PNC Financial Services Group, Inc. ("PNC Financial"). (Docket entry nos. 23, 26). Oral argument on PNC Wealth's discovery appeals was conducted on December 16, 2013, at the conclusion of which both appeals were submitted for a decision.

By way of relevant background, Arvonio and Rossi commenced this action against PNC Wealth and PNC Bank on January 20, 2011, and asserted causes of action for breach of contract, conversion, trespass to chattels, gross negligence, breach of fiduciary duty, and civil conspiracy. (Docket entry no. 3 at ¶¶ 50-84). Arvonio and Rossi contend that between August 1994 and July 2008, they secured a series of loans and lines of credit from PNC Bank for their real estate business. (*Id.* at ¶¶ 10, 14-18,

31-37). During that time period, Arvonio and Rossi also had investment accounts which were managed by PNC Wealth. (*Id.* at ¶¶ 11-12, 30). From June 2003 to October 2006, Arvonio and Rossi executed pledge agreements with PNC Bank, by virtue of which they pledged their investment accounts as collateral for their loan and line of credit, and agreed that those accounts could be liquidated and used to satisfy their payment obligations to PNC Bank in the event of a default. (*Id.* at ¶¶ 19-24).

As of October 1, 2008, the aggregate value of those pledged investment accounts totaled $3,913,027.30. (*Id.* at ¶ 41). Arvonio and Rossi allege that although they were not in default of their payment obligations under the loan and line of credit, PNC Wealth liquidated the securities in their investment accounts between August 6, 2008, and April 1, 2009, without advance notice to Arvonio or Rossi.[1] (*Id.* at ¶¶ 38, 42-49). Arvonio and Rossi further maintain that upon learning of PNC Wealth's liquidation of the investment account securities, they authorized PNC Wealth on April 20, 2009, "to close the accounts and pay the proceeds to PNC Bank as the secured party." (*Id.* at ¶ 46). In their complaint, Arvonio and Rossi seek to recover damages representing the difference in the value of their investment accounts at the time that their securities were unilaterally liquidated in 2008-2009, and the projected, current value of those accounts if those securities had not been sold in 2008-2009. (*Id.* at ¶¶ 55, 58, 65, 77, 80, 84).

---

1. Although not averred in the complaint, Judge Margaret A. Bisignani Moyle noted in her Memorandum and Order dated August 29, 2011, addressing the preliminary objections of PNC Bank and PNC Wealth, that since PNC Bank "perceived the debt to be undersecured... its Wealth Management arm began liquidating [plaintiffs'] securities in their investment accounts and retained the cash in such accounts to collateralize the debt." (Docket entry no. 9 at p. 2).

PNC Bank and PNC Wealth filed preliminary objections seeking to dismiss the claims for conversion, trespass to chattels, gross negligence and civil conspiracy based, *inter alia*, on the "gist of the action" doctrine. (Docket entry no. 6). By order dated August 29, 2011, Judge Moyle sustained those preliminary objections and dismissed counts II (conversion), III (trespass to chattels), IV (gross negligence) and VI (civil conspiracy) of the complaint. (Docket entry no.10). Following the close of the pleadings, PNC Bank and PNC Wealth filed a motion for judgment on the pleadings on March 7, 2012. (Docket entry no. 14). Relying upon the affirmative defense of accord and satisfaction, PNC Bank and PNC Wealth argued that the release agreement, which was contained in an amendment to the loan documents, that was executed by Arvonio and Rossi on January 15, 2010, constitutes a complete defense in this case. (Docket entry no. 15). On July 16, 2012, visiting Senior Judge Harold A. Thomson, Jr. granted the motion for judgment on the pleadings as to PNC Bank, but denied that case dispositive motion with respect to PNC Wealth based upon the "finding that disputed issues of fact remain regarding PNC Wealth Management, specifically whether PNC Wealth Management is a separate legal entity and, therefore, not party to the accord and satisfaction." (Docket entry no. 17 at pp. 1-2).

The parties thereafter engaged in paper discovery, and by order dated April 15, 2013, the special discovery master ordered PNC Wealth to produce "all policy and procedure manuals which were in effect for PNC Wealth Management from January 1; 2006 to the present," to "provide [Arvonio and Rossi] a verified statement identifying the current owner and any prior owner(s) of the PNC Wealth

Management Service mark," and to furnish Arvonio and Rossi with "verified statements" from Richard Masucci, Joseph Morris, Sally O'Brien, Mary Linda Donovan and Deborah Kolsovsky "setting forth the name of the PNC entity from which they received form 1099 or form W-2 income for years 2006 to 2010." (Docket entry no. 18). Following an *in camera* review of documents that were submitted by PNC Wealth, the special discovery master issued supplemental orders on June 10, 2013, and June 13, 2013, directing PNC Wealth to produce certain materials relating to its alleged status as a registered trademark of PNC Bank's parent corporation, PNC Financial, as opposed to a separate legal entity that is subject to suit. (Docket entry nos. 19-20).

Arvonio and Rossi subsequently served notices upon PNC Wealth scheduling the depositions of five officers of PNC Bank and indicating that the anticipated areas of inquiry would include "[t]he business activities of PNC Bank, National Association, which are conducted at Two PNC Plaza, Pittsburgh," and "[a]ll communications between and among" PNC Bank, PNC Financial Services, and PNC Wealth "regarding any business activities conducted under the name 'PNC Wealth Management.'" (Docket entry no. 29, exhibit A). Arvonio and Rossi served a comparable deposition notice with regard to designated witnesses of the non-party, PNC Financial. (*Id.* at exhibit B). Last, Arvonio and Rossi served a similar discovery deposition demand upon PNC Wealth. (*Id.* at exhibit C).

On September 9, 2013, PNC Wealth filed a motion for a protective order "seeking to stay the taking of the depositions of PNC officers until the court determines whether 'PNC Wealth Management' is a corporate

subsidiary of PNC Bank, National Association." (Docket entry no. 22 at p. 1). In support of its motion, PNC Wealth noted that it had "filed a motion for summary judgment arguing that the claims against PNC Wealth Management should be dismissed because PNC Wealth Management is not a separate legal entity subject to suit." (*Id.* at ¶ 9, exhibit 2). PNC Wealth maintained that "[i]t would be unfair and inefficient to require five (5) PNC officers to be subjected to a deposition on the substantive merits of the plaintiffs' claim when their testimony could be rendered moot if [PNC Wealth's] motion for summary judgment is granted." (*Id.* at ¶ 10). The special discovery master denied PNC Wealth's first motion for a protective order, and PNC Wealth filed the instant discovery appeal on September 11, 2013. (Docket entry nos. 22-23).

On September 23, 2013, PNC Wealth also filed a motion for a protective order relative to the scheduled depositions of designated witnesses of PNC Bank and PNC Financial. Not unlike its earlier motion, PNC Wealth sought to stay those deposition pending a summary judgment determination "whether 'PNC Wealth Management' is a corporate subsidiary of PNC Bank, National Association." (Docket entry no. 27 at p. 1). PNC Wealth asserted that its legal status could be ascertained by paper discovery and public filings with the United States Patent and Trademarks Office, the Securities and Exchange Commission, and other federal agencies. (*Id.* at ¶¶ 4-10). The special discovery master also denied that motion for a protective order on September 23, 2013, and PNC Wealth filed its second *de novo* appeal on that same date. (Docket entry nos. 25-26).

Under Pa.R.C.P. 4003.1, "discovery is liberally

allowed with respect to any matter, not privileged, which is relevant to the cause being tried." *Berg v. Nationwide Mutual Insurance Company, Inc.*, 44 A.3d 1164, 1178 n. 8, (Pa. Super. 2012), *app. denied*, 65 A.3d 412 (Pa. 2013). Information is relevant "if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Smith v. Morrison*, 42 A.3d 131, 137 (Pa. Super. 2012), *app. denied*, 57 A.3d 71 (Pa. 2012). The relevancy standard applicable to discovery is necessarily broader than the standard used at trial for the admission of evidence. *Com. v. TAP Pharmaceutical Products, Inc.*, 904 A.2d 986, 994 (Pa. Cmwlth. 2006); *George v. Schirra*, 814 A.2d 202, 205 (Pa. Super. 2002). Any doubts regarding relevancy are to be resolved in favor of discovery. *Ario v. Deloitte & Touche, LLP*, 934 A.2d 1290, 1293 (Pa. Cmwlth. 2007); *Yadouga v. Cruciani*, 66 Pa. D. & C. 4th 164, 168 (Lacka. Co. 2004).

Pursuant to Rule 4012(a), a trial court may issue a protective order "for good cause shown" in order to "protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense." Pa.R.C.P.4012(a). The party seeking a protective order under Rule 4012 bears the burden of establishing that the requested discovery is objectionable. *Griffiths v. Ulmer*, 55 Pa. D. & C.4th 370, 373 (Lacka. Co. 2002); *Chrysler v. Zigray*, 7 Pa. D. & C.4th 408, 410 (Lacka. Co. 1990). The moving party does not sustain that burden by demonstrating mere annoyance, burden or expense from the discovery being sought. *Merrifield v. Gavern*, 10 Pa. D. & C.4th 541, 542 (Lacka. Co. 1991). Rather, since litigants

should expect that "[a]lmost any discovery request causes some annoyance, embarrassment, oppression, burden or expense," *D. S. v. DePaul Institute*, 32 Pa. D. & C.4th 328, 334 (Alleg. Co. 1996), "the proper inquiry is whether the party objecting to discovery has established *unreasonable* annoyance, embarrassment, oppression, burden or expensed associated with the discovery request." *Yadouga*, 66 Pa. D. & C.4th at 169 (emphasis in original). *Accord J. A. Reinhardt & Co., Inc. v. Stettz*, 35 Pa. D. & C.4th 558, 562 (Monroe Co. 1996) (stating that "the purpose of protective orders is to shield parties and deponents from gross inconvenience.").

PNC Wealth submits that officers and designated representatives of PNC Bank and PNC Financial should not be subjected to lengthy depositions addressing the expansive ambit of the claims being asserted by Arvonio and Rossi prior to a summary judgment determination whether PNC Wealth is a separate legal entity or simply a subsidiary of PNC Bank which is insulated from liability by the release agreements. PNC Wealth posits that any discovery by Arvonio and Rossi in that regard should be restricted to interrogatories and requests for production. (Docket entry no. 21 at pp. 4-8). Arvonio and Rossi argue that the scheduled depositions are "designed to ferret out information regarding issues that have been raised by [Arvonio and Rossi] in their complaint" and "to discover information relevant to the claims and defenses in this case." (Docket entry no. 29 at pp. 7, 9).

"The trial court is responsible for overseeing discovery between the parties and therefore it is within that court's discretion to determine the appropriate measures to insure adequate and prompt discovery of matters allowed by the

Rules of Civil Procedure." *Rohm and Haas Company v. Lin*, 992 A.2d 132, 143 (Pa. Super. 2010), *cert. denied*, 132 S. Ct. 852 (U.S. 2011). "The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Stenger v. Lehigh Valley Hospital Center*, 382 Pa. Super. 75, 88, 554 A.2d 954, 960 (1989) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). Rule 4012(a) vests the trial court with the authority to direct that either (a) the discovery "shall be only by a method of discovery...other than that selected by the party seeking discovery," or (b) "the scope of discovery or deposition shall be limited." Pa.R.C.P. 4012(a)(3), (5).

PNC Wealth has not demonstrated "good cause" for the issuance of a protective order limiting the method of discovery by Arvonio and Rossi to interrogatories, requests for production and publicly available government filings. *See Econ Marketing Inc. v. Side II Associates, Ltd.*, 17 Pa. D. & C.4th 341, 346 (Monroe Co. 1992) ("It has been held that the inevitable annoyance associated with a deposition or the fact that it is time-consuming and involves some expense to the deponent does not constitute a showing of unreasonableness under Pa.R.C.P. 4012(a) such that a court could justifiably grant a motion for a protective order."). Discovery depositions will provide Arvonio and Rossi with a more effective means of properly investigating the status of PNC Wealth in an effort to determine whether it is subject to suit or immune from liability by virtue of the release agreement. *See Nardell v. Scranton-Springbrook Water Service Co.*, 24 Pa. D. & C.2d 663, 667 (Luz. Co. 1961) (observing that "oral interrogations are far superior to the written interrogatory" since "as the inquiry

proceeds, the framing of each question is dependent upon the answers to preceding questions."). Thus, PNC Wealth's motion for a protective order will be denied to the extent it seeks to confine Arvonio and Rossi to paper discovery and publicly accessible filings.

A trial court may restrict the scope of a discovery deposition under Rule 4012(a)(5) to protect a party or deponent from unreasonable burden or expense. *See Branham v. Rome & Haas Co.*, 19 A.3d 1094, 1111 (Pa. Super. 2011), *app. denied*, 615 Pa. 771, 42 A.3d 289 (2012). PNC Wealth has established "good cause" for limiting the parties' initial depositions to the potentially case-dispositive issue of PNC Wealth's status as "a separate legal entity" or a "party to the accord and satisfaction." (Docket entry no. 17 at pp. 1-2). As we have previously noted, "[w]hile a limited degree of 'fishing' is to be expected with certain discovery requests, parties are not permitted 'to fish with a net rather than with a hook or a harpoon.'" *Brogan v. Rosenn*, 2013 WL 3377193, at * 4 (Lacka. Co. 2013) (quoting *Brownstein v. Philadelphia Transp. Co.*, 46 Pa. D. & C.2d 463, 464 (Phila. Co. 1969)). Before subjecting PNC Wealth to the prospect of costly and far-reaching discovery on the various claims and defenses in this matter, Arvonio and Rossi will be required to first complete discovery on the threshold issue of PNC Wealth's legal status so that the merits of its motion for summary judgment may be addressed. If PNC Wealth's motion for summary judgment is ultimately granted, the parties will be spared the time and expense associated with unnecessary discovery. Conversely, if that motion for summary judgment is denied, the individuals who are presently scheduled to be deposed by Arvonio and Rossi,

albeit now on the narrow issue of PNC Wealth's legal status, may be subject to additional depositions regarding the merits of the claims and defenses in this case.

And now, this 20th day of December, 2013, upon consideration of the *de novo* discovery appeals of defendant, PNC Wealth management, pursuant to Lacka. Co. R.C.P. 4000.1(b) of the Special Discovery Master's orders of September 10, 2013, and September 23, 2013, the memoranda of law submitted by the parties, and the oral argument of counsel on December 16, 2013, and based upon the reasoning set forth above, it is hereby ordered and decreed that:

1. Defendant's *de novo* discovery appeals are granted in part and denied in part;

2. Defendant's *de novo* discovery appeals are denied to the extent that they seek the issuance of a protective order pursuant to Pa.R.C.P. 4012(a)(3) limiting plaintiffs to interrogatories, requests for production of documents and other paper discovery as the only methods of discovery; and

3. Defendant's *de novo* discovery appeals are granted to the extent that the scope of the scheduled depositions will be restricted under Pa.R.C.P. 4012(a)(5) to the issue, as set forth in the order of July 16, 2012, addressing defendant's motion for judgment on the pleadings, of defendant's status as "a separate legal entity" or a "party to the accord and satisfaction," so that the merits of defendant's motion for summary judgment may be addressed as a threshold determination in this case.